TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00474-CV

NO. 03-03-00045-CV

NO. 03-03-00046-CV






Pantera Energy Company, Appellant


v.


Railroad Commission of Texas; ConocoPhillips Company; and Pioneer

Natural Resources, USA, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NOS. GN103473, GN200177 & GN200727, HONORABLE W. JEANNE MEURER,

JUDGE PRESIDING





O P I N I O N




 Pantera Energy Company challenged orders of the Railroad Commission dismissing
several of its applications to unpool oil and gas units under Commission rule 3.38(d)(3) by filing in
district court two suits for judicial review. See 16 Tex. Admin. Code § 3.38(d)(3) (2003). It also
filed a declaratory judgment action seeking a declaration that the Commission had violated its own
rule and had acted arbitrarily and capriciously by requiring Pantera to provide notice of its
applications to owners and operators of adjacent offset tracts when the rule did not explicitly require
such notice. See 14 Tex. Reg. 1575 (1989), adopted 14 Tex. Reg. 5255 (former 16 Tex. Admin.
Code § 3.38(d)(3) (Tex. R.R. Comm'n) (hereinafter cited as Former Rule 3.38(d)(3)). The district
court dismissed the causes as moot because while they were pending, the Commission amended the
applicable rule to require notice to offset operators. See 16 Tex. Admin. Code § 3.38(d)(3) (2003). 

 We have consolidated the three causes on appeal for purposes of our review. We
reverse the district court's judgments in the two suits for judicial review and remand those causes
to the district court for proceedings on the merits; we affirm the district court's dismissal of Pantera's
declaratory judgment action. 


BACKGROUND


 Pantera initially filed eight applications with the Commission to dissolve certain of
its voluntarily pooled oil and gas units in the West Panhandle Field under the Commission's rule
3.38(d)(3). See Former Rule 3.38(d)(3). After the Commission failed to grant these applications,
Pantera pursued an unsuccessful interim appeal with the Commission and then scheduled a hearing
on two of the eight applications. These two applications were eventually dismissed without
prejudice because Pantera had failed to provide notice to offset operators. Pantera filed a motion for
rehearing asking the Commission to reverse the orders of dismissal, but its motion was denied. 
Pantera then filed a suit for judicial review challenging the dismissal orders.

 About a month prior to the dismissal orders on the first set of applications, Pantera
filed an additional forty applications to unpool certain other units in the same field. The
Commission consolidated these new applications with Pantera's six pending applications. The
examiner assigned to these forty-six applications, Colin Lineberry, issued a proposal for decision
recommending that the Commission deny the applications because they were an attempt to
circumvent density restrictions and were really applications seeking exceptions to the density
provisions, falling under subsection 3.38(h) of the same rule, rather than applications seeking merely
to divide previously pooled units. (1) See 16 Tex. Admin. Code § 3.38(h) (2003). That subsection
requires an applicant to provide to the Commission the names and addresses of all "affected
persons," which include operators and mineral interest owners of all adjacent offset tracts: 


If a permit to drill requires an exception to the applicable density provision, the
operator must file . . . a list of the names and addresses of all affected persons. For
the purpose of giving notice of application, the commission presumes that affected
persons include the operators and unleased mineral interest owners of all adjacent
offset tracts.



Id. 

 Because Pantera had been informed by the Commission that it must provide notice
to offset operators, and because Pantera had not complied with this request, the Commission adopted
Mr. Lineberry's proposal for decision and dismissed Pantera's applications without prejudice. With
respect to these applications, Pantera filed a second suit for judicial review in the district court.

 Additionally, Pantera filed a suit for declaratory judgment after the Commission
indicated that the applications would not be granted until Pantera had provided notice to offset
operators. In that suit, Pantera asked the court to declare that the Commission was applying its rule
in an improper and unjust manner and that Pantera's applications must be granted administratively,
as provided in the rule, and without notice to offset operators.

 In the declaratory judgment action, Pantera filed a motion for summary judgment. 
The Commission, as well as intervenors Phillips Petroleum Co., Conoco Inc., (2) and Pioneer Natural
Resources U.S.A., Inc., responded by filing motions to dismiss and pleas to the jurisdiction, claiming
that a recent amendment to rule 3.38(d)(3) rendered the cause moot, as the amended rule now
required notice to offset operators, and that the suit for declaratory relief was duplicative of Pantera's
two pending administrative appeals. See 16 Tex. Admin. Code § 3.38(d)(3)(B) (2003) ("If one or
more wells on the unitized tract has produced from the field within the 12-month period prior to the
application, the applicant shall include on the list all affected persons described in subsection
(h)(1)(A) of this section, and the Commission shall give notice . . . to these affected persons."). The
district court granted the pleas to the jurisdiction, dismissing Pantera's declaratory judgment cause
as moot and declining to exercise jurisdiction over it.

 The Commission and the intervenors similarly filed pleas to the jurisdiction in the
administrative appeals on the identical mootness argument, and Pantera filed motions for summary
judgment. The district court granted the Commission's and intervenors' pleas and dismissed the
administrative appeals. Pantera asks this Court to reverse all three district-court judgments and
remand the causes for proceedings on the merits.


DISCUSSION


 Pantera argues that the district court erred by declaring its dispute with the
Commission moot because (1) the Commission's amended rule should not be applied retroactively
to its applications and (2) the district court had jurisdiction to determine whether the Commission
violated its own rule by arbitrarily and capriciously requiring notice to offset operators.


Standard of review

 We review a district court's ruling on a plea to the jurisdiction under a de novo
standard of review because subject matter jurisdiction is a question of law. Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Cornyn v. County of Hill, 10 S.W.3d 424, 427 (Tex.
App.--Waco 2000, no pet.). The plaintiff has the burden to plead facts affirmatively showing that
the district court has jurisdiction. Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440,
446 (Tex. 1993). A plea to the jurisdiction should, however, be decided without delving into the
merits of the case. See County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). A plea to
the jurisdiction does not authorize an inquiry so far into the substance of the claims presented that
the plaintiff is required to put on its case simply to establish jurisdiction. Bland Indep. Sch. Dist. v.
Blue, 34 S.W.3d 547, 554 (Tex. 2000). For purposes of the plea to the jurisdiction, we construe the
pleadings in the plaintiff's favor and look to the plaintiff's intent. Brown, 80 S.W.3d at 555.

Amendments to rule 3.38(d)(3)

 Pantera argues that the amendments to rule 3.38(d)(3) are substantive changes and
that the rule therefore cannot be applied retroactively (i.e., to any future proceedings on its filed
applications). See Ex parte Abell, 613 S.W.2d 255, 260-261 (Tex. 1981). Pantera claims that the
rule as it existed on the dates its applications were filed governs the notice Pantera was required to
give, and therefore the district court erred in not considering the merits in all three causes. The
Commission, on the other hand, urges that the amendments affect only the procedural requirements
of an application under the rule and thus will govern any future steps with respect to the applications,
including the remand of the cases to the Commission. See Texas Dep't of Health v. Long, 659
S.W.2d 158, 160 (Tex. App.--Austin 1983, no writ). We agree with Pantera that the changes to the
rule were substantive.

 It is presumed that statutes operate prospectively unless expressly made retrospective. 
Tex. Gov't Code Ann. § 311.022 (West 1998); Abell, 613 S.W.2d at 258. All doubts as to
retroactivity are "resolved against retrospective operation." Abell, 613 S.W.2d at 258. An act will
not be applied retrospectively unless it appears by fair implication from the language used that it was
the intent of the legislature to make it applicable to both past and future transactions. Id.; Davis v.
State, 846 S.W.2d 564, 569 (Tex. App.--Austin 1993, no writ). These principles derive from the
Texas Constitution, which broadly prohibits retroactive laws. See Tex. Const. art. I, § 16; Abell, 613
S.W.2d at 259. With respect to procedural statutes, however, it is settled law that the legislature may
make changes applicable to future steps in pending cases. See Long, 659 S.W.2d at 160 (holding
change in requirements of landfill application procedural); Abell, 613 S.W.2d at 262 (holding new
law creating doctor-patient privilege as relating to admissibility of evidence and thus procedural in
nature). The same legal principles apply to administrative rules. See Grocers Supply Co. v. Sharp,
978 S.W.2d 638, 643 (Tex. App.--Austin 1998, pet. denied) (citing Long, 659 S.W.2d at 160).

 When Pantera filed its applications, subsection 3.38(d) required the following: (1)
notice to all current lessees and unleased mineral interest owners of each tract within the joined or
unitized tract, (2) an opportunity for a hearing, and (3) administrative grant of the application in the
case of written waivers of notice or in the absence of a timely written protest. See Former Rule
3.38(d)(3). Former subsection 3.38(d)(3) read: 


(3) Division after joinder or unitization. If two or more separate tracts are joined or
unitized for oil, gas, or geothermal development and accepted by the
commission, the joined or unitized tracts may not . . . be divided into the
separate tracts . . . unless and until the commission approves such division after
application, notice to all current lessees and unleased mineral interest
owners of each tract within the joined or unitized tract, and an opportunity
for hearing. If written waivers are filed or if a protest is not filed within the
time set forth in the notice of application, the application will be granted
administratively.



Id. (emphasis added). The amended subsection 3.38(d)(3) reads:


(3) Unit dissolution.


 (A) If two or more separate tracts are joined to form a unit for oil and gas
development, the unit is accepted by the Commission, and the unit has
produced hydrocarbons in the preceding twenty (20) years, the unit
may not thereafter be dissolved into the separate tracts . . . unless the
Commission approves . . . . 


 (B) The Commission shall grant approval only after application, notice, and an
opportunity for hearing. [. . .] [I]f one or more wells on the unitized tract
has produced from the field within the 12-month period prior to the
application, the applicant shall include on the list all affected persons
described in subsection (h)(1)(A) [including offset operators] of this
section . . . .


 (C) A Commission designee may grant administrative approval if the
Commission designee determines that granting the application will not
result in the circumvention of the density restrictions of this section or
other Commission rules, and if either . . . written waivers are filed . . . [or]
no protest is filed . . . .



16 Tex. Admin. Code § 3.38(d)(3) (2003) (emphasis added). The amendment added the requirement
of notice to offset operators, which on its own is a procedural change. However, the subsection was
further amended to add a criterion for the grant of an application: determination that its grant will
not result in circumvention of the density restrictions. Also, the amended rule added the condition
that the unit have produced hydrocarbons in the preceding twenty years before it can be dissolved. 
These amounted to substantive changes in the standard by which the Commission reviews and grants
applications and, taken together, are more than mere procedural changes; they are changes in the
substantive law governing the right to unpool. 

 The amended rule does not indicate the Commission intended that it be applied
retroactively. Although the preamble to the new rule states that the amendments "do not change
current Commission practice or requirements" and only "clarify current Commission policy
concerning notice requirements and administrative approval of applications for unit dissolution," the
new requirement of notice to offset operators is clearly a change in Commission policy. See 26 Tex.
Reg. 9480 (2001) (16 Tex. Admin. Code § 3.38(d)(3)) (proposed Nov. 23, 2001). The Commission
did not require notice to offset operators under the old rule 3.38(d)(3); its demand of such notice
from Pantera stemmed from the Commission's characterization of the applications as implicating
subsection 3.38(h)'s density restrictions. As we believe that the amendments changed at least the
Commission's notice policy, its statement in the preamble that the amendments do not change
current policy is trumped by the plain language of the amendment. Thus, we believe that the
presumption of prospective application applies to the amendments to subsection 3.38(d)(3).

 Furthermore, the relationship between the Commission's actions on Pantera's
applications and the rule amendment appears more than coincidental--it appears intentional and
unfair. An agency cannot change the rules of the game in the middle of a dispute by first demanding
extra requirements of an applicant, dismissing its applications for failure to comply, and then
amending the rule to include those requirements. See Flores v. Employees Ret. Sys., 74 S.W.3d 532,
545 (Tex. App.--Austin 2002, pet. denied) (holding agency's implementation of new policy months
after applicant's hearing seeking disability benefits under earlier policy and agency precedent was
arbitrary and capricious as to that applicant).

 We refuse to divide the rule into aspects that are procedural--the notice to offset
operators provision--and those that are substantive--the consideration of density circumvention and
the condition of production within twenty years. The Commission cannot pick and choose which
aspects of the rule it will apply retroactively and which aspects prospectively. The nature of the
entire rule is substantive as it affects the right to dissolve previously pooled units. Thus, we will not
find that the notice aspect applies retroactively while the other criteria apply only prospectively. As
a result, we hold the entire new subsection 3.38(d)(3) constitutes a substantive change that does not
apply to Pantera's pending applications if they should be remanded. Therefore, the old rule, as it
appeared on the books when Pantera filed its applications, must govern if there is a remand to the
Commission. (3)


Mootness

 Mootness is an issue that implicates subject matter jurisdiction. See Speer v.
Presbyterian Children's Home & Serv. Agency, 847 S.W.2d 227, 229 (Tex. 1993). The mootness
doctrine limits courts to deciding cases in which an actual controversy exists. Camarena v. Texas
Employment Comm'n, 754 S.W.2d 149, 151(Tex. 1988). A controversy must exist between the
parties at every stage of the legal proceedings, including the appeal. Williams v. Lara, 52 S.W.3d
171, 184 (Tex. 2001). If a controversy ceases to exist--"the issues presented are no longer 'live' or
the parties lack a legally cognizable interest in the outcome"--the case becomes moot. Id. (quoting
Murphy v. Hunt, 455 U.S. 478, 481 (1982)). If a case becomes moot, the parties lose their standing
to maintain their claims. Id.

 Here, the controversy between the parties was whether the Commission had violated
its own rule by (1) requiring Pantera to provide notice to offset operators and (2) arbitrarily and
capriciously refusing to grant administrative approval of Pantera's rule 3.38(d)(3) applications. Rule
3.38(d)(3) had been amended by the time the district court entered its judgment, and thus the court
determined that the amendment rendered Pantera's arguments moot. Its reasoning, most likely, was
that the amended rule amounted to a procedural change, that such amendment would apply to any
future steps with respect to Pantera's filed applications, and that therefore there was no longer a
controversy between Pantera and the Commission over whether Pantera needed to give notice to
offset operators. (4)

 Because we hold that the rule changes were substantive and do not apply to future
steps in this litigation, the district court erred in determining the issue moot and by refusing to
exercise jurisdiction over the matter. The proper course of action would have been for the district
court to hear the causes on their merits, reversing and remanding if it determined that the
Commission acted wrongfully, or affirming if it determined that the Commission did not exceed its
authority. See Tex. Gov't Code Ann. § 2001.174 (West 2000). 


Pantera's declaratory judgment action

 Both Pantera's declaratory judgment action and its two suits for judicial review
challenge the same actions by the Commission--dismissal of its applications due to improper
application of rule 3.38(d)(3)--and seek the same relief: a determination that the old rule applies,
that Pantera was not required to give notice to offset operators, and that the Commission acted
arbitrarily and capriciously in not granting the applications. Thus, its declaratory judgment action
is duplicative of its other two suits and was properly dismissed by the district court. See Young
Chevrolet, Inc. v. Texas Motor Vehicle Bd., 974 S.W.2d 906, 911 (Tex. App.--Austin 1998, pet.
denied) (trial court properly dismissed declaratory judgment action that requested same relief as
administrative appeal). 


CONCLUSION


 The amendments to rule 3.38(d)(3) amounted to substantive changes and did not,
therefore, render Pantera's two suits for judicial review moot. Pantera's declaratory judgment action,
however, was duplicative of the issues presented in those suits and was properly dismissed. We
therefore reverse the judgments of the district court with respect to the two suits for judicial review
and remand these causes to the district court for further proceedings consistent with this opinion; we
affirm the district court's dismissal of the declaratory judgment action.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson: Opinion by Justice B. A. Smith;

 Concurring and Dissenting Opinion by Justice Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed: October 30, 2003

1. There is some evidence in the record to support the examiner's suspicions. Pantera applied
for a density exception in 1997 to drill a well on one of the same units at issue here but withdrew the
application when Phillips Petroleum Co. protested. Pantera then refiled for a permit to drill at
exactly the same well location with a restriction that it not be able to produce that well concurrently
with its existing well. When the new well was completed, Pantera shut-in the existing well. The
Commission's concern, as illustrated by Mr. Lineberry's proposal for decision, was that by applying
to unpool the same unit, Pantera would effectively be giving itself the very exception that it sought
but withdrew in 1997, without an opportunity for protest or a hearing by Phillips or other offset
operators.
2. ConocoPhillips Co. is the present successor-in-interest to the two intervenors Conoco and
Phillips.
3. Because this Court is not permitted to consider the merits of Pantera's claims, but only the
narrow issue of whether the district court erred in declining jurisdiction, we do not address the
question of whether it was proper for the Commission to have considered density circumvention with
respect to subsection 3.38(d)(3) applications under the old rule, which must govern Pantera's
applications if remanded. For the same reason, neither do we address whether it was proper for the
Commission to characterize Pantera's applications as seeking density exceptions, under subsection
3.38(h), rather than as applications to unpool under subsection 3.38(d)(3).
4. We note ConocoPhillips's point at oral argument that even if the issue before the district
court was not formally rendered moot by the rule amendments, it was in practical effect rendered
moot because by now the offset operators, including ConocoPhillips, have actual notice of Pantera's
applications. We reject this argument because from the record it is not clear whether there are any
"affected persons" besides the intervenors to whom notice would have been required under the new
rule and because the controversy between Pantera and the Commission over whether the
Commission violated its own rule still exists.